IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEO SNIGER,<br>    Plaintiff,<br>      v.<br><br>CVTECH GROUP, INC., THIRAU LTEE, THIRAU LLC, RIGGS DISTLER & CO., INC., ANDRE LARAMEE, Individually, AND ALAIN GAGNE, Individually,<br>    Defendants. | CIVIL ACTION NO. 11-6130<br>(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

VERONICA W. SALTZ
SALTZ POLISHER P.C.
993 OLD EAGLE SCHOOL ROAD
SUITE 412
WAYNE, PA 19087

    On behalf of plaintiffs

BRUCE E. BARRETT
MARGOLIS EDELSTEIN
100 CENTURY PARKWAY
SUITE 200
MOUNT LAUREL, NJ 08054

    On behalf of defendants

**HILLMAN**, District Judge

    This case presents the issue of whether an arbitration agreement from an employment contract signed in 2009 survives a

1

subsequent letter agreement signed in October of 2010.  Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint and compel arbitration.  The Court has considered the parties' submissions, and decides this matter pursuant to New Jersey law.  For the reasons expressed below, Defendants' motion to dismiss the complaint pursuant to the contractual arbitration requirement and compel arbitration is granted.

## BACKGROUND

In July 2009, Defendant, Thirau LLC, purchased the company, Defendant Riggs Distler, which was owned by Plaintiff Leo Sniger.  Following the acquisition, Riggs Distler entered into an employment agreement with Plaintiff on or about July 21, 2009.  Later, in May 2010, Plaintiff was asked to assume the position of President for Thirau LLC.  While serving as both President and CEO of Riggs Distler and President of Thirau, Plaintiff reported to Defendants Andre Laramee and Alain Gagne.

After assuming the responsibilities as President of Thirau LLC in May of 2010, Plaintiff claims that he discovered that Thirau had "inadequate accounting controls, policies, and/or procedures relating to the financial aspects of the company . . . ."  (Pl. Amend. Comp. at 5.)  Following an independent financial review, Plaintiff alleges that he confirmed that there were numerous errors in billing, which he attempted to communicate to Laramee and Gagne on several occasions.  After raising these concerns, however,

Plaintiff claims that Defendants Laramee and Gagne became angry and advised Plaintiff that all of his recommendations were being rejected.

Plaintiff further claims that in August or September 2010, Laramee asked him to purchase approximately $3 million of equipment for Riggs Distler. "Reasonably believing that what Defendant Laramee had directed him to do . . . was fraudulent and illegal," Plaintiff refused to participate in the purchase. (Id. at 7.) At an executive meeting on October 7, 2010, Plaintiff claims that he again expressed his belief to Laramee and Gagne that the Defendants were engaging in "fraudulent, deceptive, and illegal activities." (Id. at 8.)

On October 18, 2010, Laramee and Gagne advised Plaintiff that he was being terminated from both Thirau and Riggs Distler "without cause" and "effective immediately." On October 19, 2010, the parties executed a new employment agreement in letter form, which Plaintiff claims effectively withdrew his termination from Riggs Distler only, and served to supersede his original Employment Agreement dated July 21, 2009.[1]

Plaintiff worked under these terms until January 27, 2011, when he was informed that he would be terminated the following day.

---

[1] The new letter agreement stated that it was "without prejudice and for settlement purposes only," and indicated that its purpose was to present Plaintiff with "other ways of putting an end to the Employment Agreement with the Company." (Def. Ex. D.)

3

Although it is unclear whether Plaintiff was actually terminated the next day, he continued to work for Defendants until February 1, 2011.

At some point after this, Plaintiff claims that he was informed that Laramee had advised the Defendants' Board of Directors that Plaintiff had been terminated because of his wife's disability, which Plaintiff claims he had disclosed to and discussed with Defendant Laramee in May 2010 through December 2010.[2]

As a result, Plaintiff filed suit. Plaintiff claims that he was terminated in retaliation for discovering and refusing to participate in Defendants' alleged fraudulent activities, and because his wife's illness would affect his job performance. Plaintiff also claims that Defendants failed to pay him what he was owed under his employment contract. For those alleged violations, Plaintiff has asserted claims under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. 34:19-1 *et. seq.*, New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. 10:5-1 *et. seq.,* and the New Jersey Wage and Hour Law, N.J. Stat. Ann. 34:11-4.1. (Pl. Am. Comp. at 1.)[3]  Defendants have filed the

---

[2] Plaintiff's wife suffers from sarcoidoses, a progressive disability that is a serious and debilitating lung disease.

[3] Plaintiff's amended complaint asserts a claim for a violation of the New Jersey Wage Act ("Wage Act") N.J. Stat. Ann. 34:11-57 *et. seq.*, and the Court presumes he intends his claim to arise under the New Jersey Wage and Hour Law.

4

present motion to dismiss the complaint and compel arbitration pursuant to the contractual arbitration requirement.

## DISCUSSION

**A.  JURISDICTION**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the Plaintiff and Defendants are of diverse citizenship and the amount in controversy exceeds the sum or value of $75,000.

**B.  STANDARD OF REVIEW**

A court "decides a motion to compel arbitration under the same standard it applies to a motion for summary judgement." Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009) (citations omitted).  The Court applies this standard because a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." Century Indem. Co. v. Certain Underwriters at Llyod's, London, 584 F.3d 513, 528 (3d Cir. 2009). As such, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." Kaneff, 587 F.3d at 620.  Furthermore, "[a]s with the standard for summary judgment, '[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'"  Vilches v. The Travelers Cos., Inc., 413 Fed. Appx.

487, 491 (3d Cir. 2011) (quoting <u>Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.</u>, 636 F.2d 51, 54 (3d Cir. 1980)).

**C.  Analysis**

In the present motion, Defendants argue that they entered into a voluntary agreement to arbitrate disputes with Plaintiff, and as such, this Court must dismiss Plaintiff's complaint in favor of arbitration.  Specifically, Defendants contend that the original employment agreement required the parties to arbitrate the claims Plaintiff has brought against them, and that the arbitration clause remained in effect even after his termination and the subsequent letter agreement.

Plaintiff disagrees.  Plaintiff argues that at the time of his termination on January 28, 2011, there was no valid agreement to arbitrate because he signed a new employment agreement in the form of a Letter Agreement dated October 19, 2011, after being terminated "without cause" one day before.  Furthermore, because the new agreement did not include an arbitration clause, Plaintiff argues that the arbitration agreement from the previous Employment Agreement does not apply to the Letter Agreement, or, alternatively, that the Employment Agreement was superseded by the Letter Agreement.  Plaintiff further contends that this is evidenced by the terms and conditions of the letter agreement itself and Defendants' conduct after the expiration of the Letter Agreement.

6

It is generally recognized that arbitration is "a matter of contract between the parties." First Options of Chicago, Inc. v. Kaplan ("First Options"), 514 U.S. 938, 943 (1995). Consequently, while it is true that the Federal Arbitration Act establishes a policy favoring the liberal construction of arbitration agreements and the resolution of any doubts in favor of arbitration, the court must also find that the parties have actually agreed to submit to arbitration for any particular issue. See Granite Rock Co. v. International Broth. Of Teamsters, 130 S. Ct. 2847, 2858 (2010).

Whether the parties have agreed to arbitrate their disputes is reserved for judicial determination unless the parties have clearly indicated otherwise. Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2009). In making this determination, a court must "inquire into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). As a general policy, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." Century Indem. Co. v. Certain Underwriters at Llyod's, London, 584 F.3d 513, 556 (3d Cir. 2009) (citing AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)); Haskins v. First American Title Ins. Co., Civ. No. 10-5044, 2012 WL 1599998

7

(D.N.J. May 4, 2012); see also Garfinkel v. Morristown Obstectrics & Gynecology Associates, P.A., 773 A.2d 665, 670 (N.J. 2000) (noting that New Jersey law affords arbitration a "favored status" and instructing that "an agreement to arbitrate should be read liberally in favor of arbitration" (quotation omitted)).

If the court determines that a valid and enforceable agreement exists, then the decision to enforce arbitration is mandatory. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997) (enforcement of arbitration mandatory).

It is generally accepted that federal courts should apply "state-law principles that govern the formation of contracts . . . . to assess whether the parties agreed to arbitrate a certain matter." Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2783 (2010) (quoting First Options of Chicago, Inc. v. Kaplan ("First Options"), 514 U.S. 938, 944 (1995)); Battaglia v. McKendry, 233 F.3d 720, 724 (3d Cir. 2000); Gilbert v. Fox & Roach, LP, No. Civ. 05-688 (RBK), 2005 WL 2347121 (D.N.J. Sept. 23, 2005).

Here, Plaintiff does not contest that his claims are within the scope of the arbitration agreement, if it were held valid.[4]

---

[4] Claims such as the ones brought by plaintiff here have been held to be arbitrable. See Singer v. Commodities Corp., 292 N.J. Super. 391 (N.J. Super. Ct. App. Div. 1996) (enforcing arbitration on a CEPA claim); Young v. Prudential Ins. Co., 688 A.2d 1069 (N.J. Super. Ct. App. Div. 1997) (enforcing arbitration on a LAD claim); Vilches v. The Travelers Cos., Inc.,413 Fed. Appx. 487, 494 (3d Cir. 2011) (vacating the

8

Instead, he contends that no valid agreement to arbitrate exists at all. Accordingly, this Court must only determine whether or not a valid agreement to arbitrate existed when the Plaintiff was terminated on January 28, 2011. In order to do so the Court must look at the parties' agreements.

**The July 2009 Employment Agreement**

The original employment agreement included a provision for termination and an attached arbitration agreement. As to termination, Section 5.2 of the employment agreement explicitly established the conditions for termination "without cause." Section 5.2 states:

> The Company may terminate the Employee's employment under this Agreement at any time upon ninety (90) days' prior written notice. The Company may, at its sole discretion, by notice in writing, specify an earlier termination date, in which case, the Employee shall be paid the outstanding portion of salary equal the ninety (90) days' notice (subject to normal withholding and other deductions). (Def. Ex. B, § 5.3.)

Appendix 2 of the July 2009 employment agreement outlines the Arbitration Agreement, stating, that "both the Company and Employee agree that neither shall initiate nor prosecute any lawsuit or administrative action . . . in any way related to any claim covered by this Arbitration Agreement."

As to modification or revocation, section 12 of the

---

District Court's decision and ordering arbitration for claims arising under the FLSA and the New Jersey Wage and Hour law).

Arbitration Agreement provides:

> This arbitration agreement shall survive the termination of Employee's employment. It can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Arbitration Agreement.

When Plaintiff signed the 2009 agreement, he initialed each page of the entire document, including all appendices, and signed the last page of each particular appendix, thereby representing that he read and understood all agreements between himself and the Company. Plaintiff does not contest the validity of the original Employment Agreement, or that he agreed to its terms including the arbitration agreement.

**The October 2010 Letter Agreement**

The letter agreement that Plaintiff and Defendants entered into after Plaintiff's termination from Riggs Distler was rescinded stated that its purpose was to present Plaintiff with "'other ways' of putting an end to [your] Employment Agreement with the Company." The Letter Agreement included the following three provisions:

1. In order to facilitate this transition with his successors, [Plaintiff] agrees to assume all of his normal functions and duties under the supervision of Alain Gagne, Chief Operating Officer, as per stipulated in the Employment Agreement executed July 21, 2009, for a period of three (3) months starting October 19, 2010.
2. At the end of the three (3) month period and providing that [Plaintiff] has complied with every obligation of the Employment Agreement referred to above, Leo Sniger will receive, subject his execution of a formal Separation Agreement and Release . . . a separation payment in an amount equal to ninety (90) days of his current base salary. . . .
3. [Plaintiff] also agrees to release and discharge the Company and any and all of its predecessors . . . in full

and final settlement of any and all claims . . . .

Plaintiff interprets the two agreements much differently than Defendants. Plaintiff argues that his claims are not barred from litigation because they arose on or after October 19, 2010, the same day he signed the Letter Agreement and one day after the Employment and Arbitration Agreements were terminated.

Plaintiff then argues that the provision "normal functions and duties . . . as per stipulated in the Employment Agreement" in the October 2010 Letter Agreement refers only to a particular appendix outlining the "Employee Functions and Responsibilities" originally assigned to Plaintiff and does not evidence an intent that the original employment agreement was still in effect. Given this, Plaintiff concludes that it was not the intent of the parties to include the Arbitration Agreement as part of the Letter Agreement, and therefore, arbitration is improper.

In response, Defendants present two alternative arguments which both lead to arbitration. Defendants argue that regardless of whether the original agreement was superseded by the letter agreement, the claims here arose from Plaintiff's employment from July 2009 through October 2010 – when the original agreement was still in effect – and thus are subject to arbitration. In the alternative, Defendants argue that the issue of arbitration after

employment ends is dealt with in the contract itself.[5]

Considering the entirety of the facts in light of the contractual terms, the surrounding circumstances,[6] and the purpose of both contracts, the Court finds Defendant's argument to be persuasive. Although an agreement to arbitrate generally does not continue in effect after the underlying contract expires, a provision relating to dispute resolution, in some circumstances, may survive the end of a contract. See Litton Fin. Printing Div.

---

[5] The Court notes that the Letter Agreement is subject to an interpretation not argued by the parties. The Letter Agreement could be read to constitute the 90 day written notice required by the original Employment Agreement when the Plaintiff was terminated "without cause." Because, however, neither party advanced this interpretation, and this reading does not affect the outcome of Defendants' motion, the Court will not consider it further.

[6] Plaintiff opaquely references Defendants' conduct as evidence of their intent to "enter into a new employment agreement for a limited duration" and abandon the 2009 contract (Pl. Brief in Opp. to Motion to Compel at 20.) While it is true that the court may consider a contract abandoned where one party acts in a manner inconsistent with the existence of the contract, New Jersey law requires that those actions be "positive and unequivocal." County of Morris v. Fauver, 707 A.2d 958, 965-66 (N.J. 1998) (quoting Anstalt v. F.I.A. Ins. Co., 749 F.2d 175, 178 (3d Cir. 1984)). Abandonment of a contract also generally requires that the entire contract be terminated. Fauver, 707 A.2d at 965. Accordingly, in Fauver the Court found that the "words and actions of the parties, while demonstrating mistaken assumptions about their agreement, did not evidence a definite mutual intention to abandon the entire contract." Id. at 966. Here, Plaintiff has presented insufficient evidence to establish abandonment of the Employment Agreement. While the Defendants did continue to employ Plaintiff, the Letter Agreement itself references the original Employment Agreement in more than one location, as well as using the exact terms as the conditions for payment.

v. NLRB, 501 U.S. 190, 208 (1991); Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers Int'l Union, 28 F.3d 347, 363-64 (3d Cir. 1994).

For example, the Third Circuit in Townsend applied New Jersey law in a similar situation and determined that the arbitration agreement did survive the end of the contact.  Townsend v. Pinnacle Ent., Inc., 457 Fed. Appx. 205, 209 (3d Cir. 2011).  Noting that there, as here, the plaintiff's previous contract with the defendant included an arbitration agreement, the Third Circuit looked to the text of the original contract in order to determine whether arbitration was appropriate.  Townsned, 457 Fed. Appx. at 209.  Given that the original contract explicitly established that "the agreement to arbitrate shall survive the expiration of this Agreement. . .," the Third Circuit found that arbitration in a dispute relating to the subsequent contract was proper despite the fact that the contract did not specifically reference the previous arbitration agreement.  Id.  In support of its conclusion, the Third Circuit noted that the provision evidenced "the intent of the parties to arbitrate all disputes . . . not simply those which [arose] during the [first term]"  Id.  As a result, the agreement to arbitrate was valid at the time of the termination "without regard" to the agreement.  Id.

The same conclusion must be found here.  The arbitration provision in the 2009 agreement explicitly provides that the

13

...

arbitration agreement would survive the termination of Plaintiff's employment unless revoked or modified by a writing specifically intended to revoke or modify the Arbitration Agreement.  The agreement also provides that neither party shall file a lawsuit for any claims arising under the employment agreement.  When combined, both sections address the specific situation, as here, where a former employee seeks to resolve any conflict with his former company.

Moreover, these provisions are not ambiguous.  They evidence the intent of the parties to arbitrate all disputes arising out of the employment relationship between Plaintiff and Defendants, not simply those that arose prior to the October 2010 Letter Agreement.  Because there is no writing that evidences a specific intent to revoke the arbitration agreement, the Arbitration Agreement was valid during Plaintiff's entire tenure with Defendants, including when Plaintiff's claims against Defendants arose.  Accordingly, because of the valid agreement to arbitrate Plaintiff's claims against Defendants, this Court is required to compel arbitration.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss the complaint pursuant to contractual arbitration requirement and compel arbitration will be granted.  An appropriate order will be entered.

Date: <u>September 26, 2012</u>                    <u>s/ Noel L. Hillman   </u>
At Camden, New Jersey                         Noel L. Hillman, U.S.D.J